Next case for argument, Cbeyond Communications v. Sheahan, Mr. Rozier Morning. Would you wait a second until the people leave? Okay. Morning, Your Honors. My name is Leland Rozier. I am with the Clark Hill Law Firm. I'm representing the appellant Cbeyond. This is a case about double charging. Cbeyond purchases circuits, usually DS1s, from AT&T. The parties entered into an interconnection agreement that allowed for purchases of circuits with a separate charge if the circuits needed to be equipped with clear channel capability, or CCC. Well, didn't you agree on this with AT&T? The interconnection agreement was agreed on with AT&T, but this was at a time before the charges were separated. There was a subsequent order from the ICC that said... So why don't you negotiate a new contract with AT&T? Well, that may be an option. At this time, we believe that the agreement that we have separates the charges. No, it seems to me that your argument, to the extent I understand it, is that you're entitled to all the benefits of the agreement and none of the detriments. Most agreements have got benefits and detriments. You don't want to get rid of the whole agreement, apparently, because it's got some benefits, but you want the commission or the judiciary to free you of the detriments, and that's not ordinarily how contracts work. I don't see that as freeing us of the detriments. You agreed to pay a fee for this clear channel capability hookup, whatever that is. I have no idea, after reading the briefs, what that is. But you agreed to pay a fee for it, and now you tell us you don't want to. Well, that's an attempt to be rid of a detriment in the contract. We believe we're already paying it as a result of a second cost study that was adopted. As a result of a what? I'm sorry? Excuse me? You're paying it as a result of... Do you think you're paying it both under the contract and separately so that you're paying double? Is that what you're complaining about? We believe we're being charged that way, yes. Yes. But, of course, that's just because that's what the contract provides. Well, the contract... Look, I don't even comprehend the theory that this is a case about contract interpretation. The contract appears to be perfectly clear. To the extent I understand your argument, you're arguing that the contract, you're entitled not to have this part of the contract enforced against you. That's not a question of that contract interpretation at all. The contract also allowed for the new pricing schedules to be adopted when they were offered by the ICC. Those pricing schedules separate the charge. That is, when you order a complete circuit, you're already paying for the CCC capability. First, I wish you would use words. I'm sorry. CCC sounds to me like the Civilian Conservation Corps, but that's in a former administration. Using real words would help. Would you mind telling me what a clear channel capability is? It treats the line such that you can get more data and clearer data through it than a normal line that you would buy. I don't know what that has to do with any clear channel. Well, there are channels in the line. It really would have helped had the parties devoted some attention in their brief to explaining some of these terms for outsiders, since none of us here is a telecom specialist. You may all be telecom specialists, but we aren't. We're generalists. Understood. But our argument is that the second cost order by the ICC already included the clear channel capability in the bundled charge and specifically stated that the separate clear channel capability charge only applied if you had a circuit without that capability and had to have it enhanced to have that capability. And so what AT&T is doing is what that you object to? If we order a circuit that's already bundled with the clear channel capability at a bundled rate that already includes it, AT&T is also then charging us for the separate optional clear channel capability charge. So you say they're charging you twice for the same servers? Yes, they're charging us twice for the clear channel capability portion. Why don't you just not pay? Then they'll sue you. Then they'll sue us, yes. Or they'll just cut off your service. Correct. What's the federal violation here? It sounds like a dispute about the contract requirements. Yes. The cost rates were brought up, were passed by the Illinois Commerce Commission using the federal section 252 parens D, 47 U.S.C. 252 parens D. And that creates cost-based rates. And so if you're being charged beyond the cost-based rates, then it's a violation of the federal law. But federal law says that the parties can contract around those federal requirements. That's correct. They can. We didn't agree to that because our agreement precedes the change in the cost order. We didn't agree to be double charged. But what is puzzling about it? You say you get a bill from them. It's double billing. You've paid for the service already. Why don't you just not pay? Did you tell AT&T, we're not going to pay you because you have no right to this. You're not giving us anything. You've already charged us for our clear channel capacity. Well, they've been arguing about it. This happens all the time. People are billed for things by mistake or maybe, you know, by design. And they say, you know, I don't owe you this money, so go away. Well, my client decided to follow the scheme and file a complaint at the Illinois Commerce Commission. I don't understand that. Why don't they wait to be sued? They won't pay. I think they are afraid of being cut off. Because you say you're not getting anything from AT&T. You're just getting a bill. You already have the clear channel capacity. You don't want anything more. So if you're being billed for something and you're not getting anything because you have it already, why don't you just tell them we're not paying because we're not getting anything. Then they can sue you or go to the FCC. Why do they have to involve the FCC in this? Maybe I need to suggest that to them after today. What? Maybe I need to suggest that to them after today. It would be a lot simpler. It won't be simple when AT&T cuts you off and ends your business. Thank you. I'll stop now. Okay. Thanks. Mr. Rozier. Mr. German? Thank you. May it please the Court. I think the key to this case I think has already been discussed is that the parties already have a contract here, and it specifies what charges are due and it specifies when they are due. And the Commission interpreted the plain language of that contract to require CBION to pay the separate clear channel charge when it orders a circuit with clear channel capability. And CBION does not... But, of course, they're arguing that you're billing them for something that they're already paying for. You're not giving them a new service. Well, we are clearly giving them the service when they ask, when they order a circuit. But what Mr. Rozier is saying is he has, they have the service, the company has the service, it has the clear channel capacity, it paid for it, and now you're billing it, you're billing him, not billing him, billing this company for the same thing that they've already paid for. Is that not true? That is their argument. I know. Well, what's the truth? What's the fact? The truth is we have a contract that sets out two separate rates, and we are charging two separate rates. The contract sets forth a standard nonrecurring charge for provisioning the circuit, and it says if you order that with clear channel capability, there will be a separate cost. Yes, but he says that CBION has already paid that. Is this a recurrent charge or what? Do you have to pay a new every year or something like that? These are one-time nonrecurring charges associated with the ordering of the facility. So when they order this particular kind of facility, there is a one-time charge of $200. But he says he's paying two times. Yes, because the contract says if you order the facility and ask for clear channel capability. Next time when you write this contract, instead of saying when you order such a circuit, there will be a fee of $1 and there will be a separate and additional fee of $1, your contract will say when you order one of these circuits, there will be a fee of $2, and then we won't have this fight. I think that's right, Your Honor. They would have to rewrite the contract if they wanted to pay $2. Yes, I understand. Rewriting the contract may make some sense. But I take it your position is the contract perhaps somewhat unhelpfully says there will be this fee and then there will be that fee. It could equally well have said there will be a single fee of the two added together. And then no one would be arguing about double billing. Yes, if the contract had different language and provided for a single fee, then I think that would be that. But here, as the Commission found, the contract... Well, what is the second fee for? The second fee... There are two fees, you're saying. There are two fees. The first fee is for what? The first fee is a standard provisioning charge that applies whenever they order a circuit of this kind, whether they order it with clear channel capability or not. There is a certain fee for AT&T's cost of provisioning. Well, is the fee the same whether they're asking for clear channel capacity or not? That fee is the same. The standard fee is applied in any event. And a smaller second fee is applied if they order CCC or clear channel capability. But if they order CCC the first time, then there wouldn't be a second fee, would there? Because they already have, right? No. Well, it's all based on their original order. Well, if their original order included the clear channel capacity, do they have to pay a second fee? Yes, because if they choose... Yes, they pay both fees because they have ordered a circuit and they have ordered a particular feature of the circuit. Yes, as the Commission found. But if they've ordered them both initially together, why is there a second fee to be paid later? It's paid at the same time. What? It's paid at the same time. It's an initial. You order a circuit, and it may have all kinds of options and variations for it. And the fee schedule is a lengthy fee schedule. These contracts, there's a standard ordering charge. And then if you order optional features at the same time, here are the additional charges that apply at the same time. So in that situation, there wouldn't be any ground for a second fee, right? I don't understand. They order this line, and they order it with clear channel capacity, and they pay a fee. Now, are you saying that they later have to pay the fee for the clear channel capacity again when they paid for it when they got the line in the first place? Not later. It's the number of fees at the same time. It's like if you go to McDonald's and you order off the menu, there's a fee for each thing that you order. And so the fees that apply, the prices that apply depend on what you order. But your opponent is saying that there was double billing here. You're saying that, no, you pay for the line, you pay for the clear channel capacity. There are two fees. You pay them at the same time. That's it. What I think he calls double billing, I would characterize his argument as really an over-recovery of your costs, that you're double recovering your costs. Well, it's not even that, as I understand it, though maybe I'm getting it wrong. The argument is that if you add the miscellaneous fees together, it exceeds what the FCC would order in a direct proceeding to measure the costs under the TELRIC approach. Yes. I hate to try to pronounce that unpronounceable initialism. Right? That's their argument. It doesn't have anything to do with whether there's one, two, three, or five. It has to do with whether the aggregate amount AT&T is collecting for setting up a clear channel circuit exceeds what the TELRIC rate would be calculated independently. Correct. I believe that is their argument, and as the commission and the district court found, it doesn't matter because they are bound by the contract. He calls it double billing. He could call it FRED, but it wouldn't change the nature of the argument. Well, what do you understand him to mean by double billing? I understand their argument to be exactly as Judge Easterbrook just described it. Their argument is that when you look at all the rates that you're applying when we order a circuit with clear channel capability, your charging is more than your cost, which they assert violates the rule. Now, didn't the contract specify free? It didn't leave you free to charge anything you wanted. The contract specifies these particular fees. That is what the commission found, and that is the exact fees that we're charging. They're bound by contract to pay them. They're specified by the contract. And the federal law permits parties to contract around the federal requirements. Correct, and that's what, in essence, the parties have done here. And the commission's decision didn't rule on any federal questions, as I understand it. It was purely a contract. Correct. In substance, the commission dismissed their complaint because from the face of the contract, it was clear that they have no claim of any kind because they're bound by their contract to pay these rates. Can they complain to the commission that the contract is misleading? Well, they didn't. They didn't bring any claims of that sort back when they filed this case in 2011 at the commission. Now, I believe their contract expired years ago, and it's now on kind of an evergreen status where unless somebody terminates it, it just continues. But they're certainly free to attempt to renegotiate the contract or negotiate a new contract. So you're saying they may have overpaid, may not have realized they were overpaying. They may have blundered. Well, they don't like their contract rates and what it provides, and they think that it's more than they should be paying. But didn't they know when they signed the contract? Did they have any idea what the rates would be? Yes, the contract had rates in it, and this contract was signed in 2004. And it stayed at a price? There was an amendment to the rate schedule in 2005. So they were paying these rates until, well, they still are paying, and then they brought the Eleanor Commerce Commission complaint in 2011. I see my time is up. Okay, thank you. Thank you. Mr. Stanton? May it please the Court, Tom Stanton. I think to Judge Sykes's point, parties can certainly- Could you speak up? Sure. Parties can certainly contract around whatever federal law requires. Once the 251B and 251C duties, those duties aren't directly enforceable. This Court has said those in the WorldCom case, they're not directly enforceable. And so once the parties enter into their contract, the terms of the contract control, and that's what the Commission did here. The Commission interpreted the contract, found that when CBON requests the optional feature, the contract authorizes that charge. If there's several circuits in the order, it's $70.32, non-recurring charge, and each additional one would be $887, and those prices are in the pricing schedule of the contract. So that's what the Commission did here. I don't know if I can add any more, if the Court has any questions. Sir, are you saying the price for the clear channel capacity feature was in the original contract? The original pricing was a higher price. It was a one fee. It was $400 and something. We have it in the appendix. And then in the Commission's 2004 order, the 02-0864 order, the Commission reduced the prices, and that's why you have it. It split out the different circuits. So if they order, so the first order will be $70.32. Any additional circuits they order in that same service order will be less. It will be $887 for the additional costs. So the new rates came in existence 2004, and the contract, when they submit the amendment, the parties agree that only the prices are going to change. They're just importing the prices that the Commission decided. The language wasn't changed. The application of this clear channel capability charge was not changing. So the prices were lowered. They got reduced prices for this, for the nonrecurring clear channel capability charge, but the application stayed the same. Is that it? Okay, thank you. Okay, thank you, Mr. Stan. So, Mr. Rozier, anything further? I really don't have anything to add, but if you have any more questions, I'll put them in the Q&A. Well, I have to say I'm kind of lost. So according to your opponents, you knew what the clear channel capacity feature was going to cost, and you paid that cost, and now you're complaining about it. Did you agree to pay that price for the clear channel capacity? On the initial agreement, yes. When it was an optional charge. Pardon? When it was an optional charge. Yeah, and you agreed to pay for it. But now under the— What do you mean by optional? It was the charge you had to pay if you wanted the clear channel capacity. They're not going to give it to you for free. At the time the agreement was entered into, however, you had to order them separately. It was a separate charge, and the circuits didn't come—the price of the circuit didn't already include the clear channel capability. After the revisions, the price of the circuit already builds in the cost of the clear channel capability. So we were only supposed to have to pay the separate clear channel capability charge if we had already had a circuit or had ordered a circuit without it. So are you saying you had to pay for this clear channel capability even though you didn't want it? What was it you had to pay? The charge would be—if we didn't want the clear channel capability, we basically still had to pay for it under the new rules. In order to get a line, you mean? In order to get the line, yes. Use the McDonald's analogy, maybe. So the original pricing is the value meal, right? You get the Big Mac, you get the fries, you get the Coke. And your argument is that they're then adding on the cost of the Coke as an optional feature, which is already embedded in the value meal? It's as if we ordered the combo meal and then still had to pay for one of the elements of the combo meal. Now I understand. Thank you. Okay, well, thank you very much.